UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SACRAMENT COLLECTIVE PENTECOSTAL CHURCH, INC, <br><br>Plaintiff, <br><br>v. <br><br>COUNTY OF SANTA CRUZ, et al., <br><br>Defendants. | Case No. 19-cv-02729-PJH <br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** <br><br>Re: Dkt. No. 31 |

Before the court is defendants County of Santa Cruz, Santa Cruz County Sheriff's Office (identified in the complaint as the "Santa Cruz County Sheriff's Department"), and Santa Cruz County Human Services Department's motion for summary judgment. Dkt. 31. Plaintiff Sacrament Collective Pentecostal Church, Inc. declined to file either an opposition or statement of non-opposition, in violation of this court's local rules. See Civ. L.R. 7-3(b). No reply was filed and the motion is suitable for decision without oral argument. Accordingly, the hearing set for November 9, 2023, is VACATED. Having read the defendants' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS defendants' motion for summary judgment.

## BACKGROUND

**A.  Factual Background**

Plaintiff is a non-profit religious corporation with a branch in San Jose. Compl., Dkt. 1-1 ¶¶ 1, 15. Plaintiff's business address is 545 Meridian Avenue, D-26585, San

1  Jose, California. See Defendants' Request for Judicial Notice, Dkt. 32 ("RJN"), Ex. A.[1]
2  Plaintiff's primary and central belief centers around the sacramental use of cannabis, its
3  properties as an entheogen, and the healing powers of cannabis. Compl. ¶¶ 17 & 23.
4  Plaintiff's members sincerely believe that cannabis is their religious sacrament. Id.
5  Plaintiff "stores its Donations, Sacrament, and other miscellaneous items . . . on its
6  Members' Property located at 191 Station Ranch Road, Scotts Valley, California". Id.
7  ¶ 16. The property identified in the complaint, 191 Station Ranch Road, is owned by
8  Davide Berti and used, at least at the relevant times herein, as his and Corinna Reyes's
9  personal residence. Id.; see also RJN, Ex. E (transfer deed); Declaration of Mark Larson
10 in Support of Defendants' Motion for Summary Judgment ¶¶ 11–13 & Ex. A at 7–8,
11 Dkt. 33 ("Larson Decl.") (search of 191 Station Ranch Road "revealed evidence that
12 Reyes and Berti were living together" at the property). Plaintiff is not licensed to do
13 business in Santa Cruz County. Compl. ¶ 34; see also RJN, Ex. D.
14      Defendants' actions giving rise to plaintiff's complaint stem from a welfare fraud
15 investigation that began in February 2019, involving plaintiff's executive officers Corinna
16 Reyes and Davide Berti. Larson Decl. ¶ 4 & Ex. A at 3. During the welfare fraud
17 investigation, the county discovered that Reyes was listed as the Chief Executive Officer
18 of a business named Golden State Care Collective. Id. ¶ 7 & Ex. A at 5. Reyes's phone
19 number was associated with three separate secular marijuana delivery services. Id. As
20 a result of the cannabis discoveries, the welfare fraud investigation team contacted the
21 Santa Cruz County Cannabis Licensing Office, which regulates cannabis businesses
22 within the unincorporated area of Santa Cruz County. Id. ¶ 9 & Ex. A at 7. The Santa
23 Cruz County Cannabis Licensing Office confirmed that neither Davide Berti nor Corinna
24 Reyes was authorized to be engaged in a cannabis business within the county of Santa

---

[1] Defendants' unopposed request for judicial notice (Dkt. 32) is GRANTED. The identified documents are the type of public documents (many of them are court filings and county ordinances) that are "not subject to reasonable dispute" because they are "generally known" or contain facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

2

1   Cruz. Id. ¶ 10 & Ex. A at 7.

2       On March 7, 2019, defendants obtained a search warrant ordering the search of
3   Corinna Reyes and Davide Berti's residence located at 191 Station Ranch Road in Scotts
4   Valley, California. Id. ¶ 11 & Ex. A at 7. On March 14, 2019, the defendants, including
5   personnel from the Human Services Department, Santa Cruz County Sheriff's Office, and
6   Department of Health Care Services, served the search warrant on Reyes's and Berti's
7   home, located at 191 Station Ranch Road. Id. ¶ 12 & Ex. A at 8.

8       On March 14, 2019, officials from the Sheriff's Office and Human Services
9   Department arrested church members and seized cannabis and currency stored at their
10  home. Compl. ¶ 18; Larson Decl. ¶ 12 & Ex. A at 8. The search also uncovered an
11  unlicensed indoor marijuana cultivation site with over 100 plants, approximately 90
12  pounds of processed marijuana packaged for resale, approximately 10 pounds of
13  concentrated cannabis, over 1000 vape pen cartridges containing concentrated cannabis,
14  and over $155,000 of cash inside the residence. Larson Decl. ¶ 14 & Ex. A at 8.
15  Defendants also discovered paperwork evidencing commercial cannabis activity. Id.
16  Defendants seized the cannabis and various cannabis products found during the search.
17  Compl. ¶ 18.

18      The seizure of the cash and marijuana led to criminal charges, and ultimately
19  convictions, of misdemeanor possession of marijuana for plaintiff's president, chief
20  executive officer, and minister Corinna Reyes, and its chief financial officer and secretary
21  Davide Berti. See RJN Exs. G, K, I & J. Additionally, Berti (who is married to Reyes) is
22  the owner of the property where the seizure took place. See RJN, Ex. E.

23      The raid also led to at least two criminal matters in state court. See People v.
24  Corinna Reyes, Santa Cruz Superior Court Case No. 19CR03157 and People v. Davide
25  Berti, Santa Cruz Superior Court Case No. 19CR03158. Each relates to the conduct
26  underlying this case—the seizure of cash and marijuana at 191 Station Ranch Road,
27  Scotts Valley, California, on March 14, 2019. The two above-cited criminal complaints
28  contain identical counts against Reyes and Berti: (1) Possession of Marijuana for Sale, in

1  violation of California Health and Safety Code section 11359; (2) Cultivating Marijuana, in
2  violation of California Health and Safety Code section 11358(c); and (3) Sale or
3  Transportation of Marijuana, in violation of California Health and Safety Code section
4  11360(a).  See Dkts. 15-1, 15-2; see also RJN Exs. G, K, I & J.  There was also a welfare
5  fraud investigation regarding the same address stemming from the search.  Larson Decl.
6  ¶¶ 4–12.

**B.  Procedural History**

Plaintiff filed the complaint originating this action in the Superior Court of Santa Cruz County, California on April 22, 2019.  See Compl.  The complaint appears to state three causes of action, all related to the allegation that defendants impermissibly discriminated against plaintiff based on its religious practices:  (1) 42 U.S.C. § 1983 ("§ 1983") for violation of the First Amendment to the United States Constitution; (2) violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc, et seq.; (3) Cal. Civ. Code § 52.1 (the "Bane Act") for violation of the First Amended to the United States Constitution and Article 1, Section 4 of the California Constitution.[2]  See generally Compl.

On May 20, 2019, defendants removed this action to federal court.  Dkt. 1; see also Dkt. 3 (certificate of service).  On May 29, 2019, defendants filed a motion to stay this action, which plaintiff did not oppose.  Dkt. 13.  On July 12, 2019, this court stayed the action pending resolution of the related criminal proceedings.  Dkt. 18.

On May 19, 2023, defendants filed a notice with the court stating that the related criminal cases (Santa Cruz Superior Court Case Nos. 19CR03158, 19CR03157, 20CR02201, and 20CR02203) were resolved.  Dkt. 22.  This court subsequently held two case management conferences which plaintiff failed to attend.  Dkts. 25 & 29.  At the first such conference the court learned that plaintiff's counsel was suspended from practice by

---

[2] The complaint also mislabels requests for remedies as additional causes of action.  See Compl. at 9–12.

4

the State Bar until June 26, 2023 and the court continued the conference until July 27, 2023 so that counsel could appear. Dkt. 25. On July 27, 2023, when plaintiff's counsel again failed to appear, the court issued an order to show cause why monetary sanctions should not be imposed on plaintiff's counsel for failure to attend the second case management conference. Dkt. 28. Plaintiff's counsel did not file any response to that order, and the court imposed sanctions for failure to show cause. Dkt. 35. At no time has plaintiff notified the court that it has retained substitute counsel. Defendants filed the instant motion for summary judgment on September 28, 2023. Dkt. 31. Plaintiff has not responded.

## DISCUSSION

### A.     Legal Standard

Summary judgment is proper where the pleadings, discovery, or affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id. "A 'scintilla of evidence,' or evidence that is 'merely colorable' or 'not significantly probative,' is not sufficient to present a genuine issue as to a material fact." United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989) (quoting Anderson, 477 U.S. at 249–50).

Courts recognize two ways for a moving defendant to show the absence of genuine dispute of material fact: (1) proffer evidence affirmatively negating any element of the challenged claim and (2) identify the absence of evidence necessary for plaintiff to substantiate such claim. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000) ("In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an

essential element to carry its ultimate burden of persuasion at trial.").

"Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or by the depositions, answers to interrogatories, and admissions on file, come forth with specific facts to show that a genuine issue of material fact exists." Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993) (per curiam). "When the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact." Id.

The court must view the evidence in the light most favorable to the nonmoving party. If evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. See Tolan v. Cotton, 134 S. Ct. 1861, 1865 (2014); Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999). However, when a non-moving party fails to produce evidence rebutting defendants' showing, then an order for summary adjudication is proper. Nissan Fire, 210 F.3d at 1103 ("If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment.").

The present motion for summary judgment is unopposed. A district court may not grant a motion for summary judgment solely because the opposing party has failed to file an opposition. Cristobal v. Siegel, 26 F.3d 1488, 1494-95 & n.4 (9th Cir. 1994) (unopposed motion may be granted only after court determines that there are no material issues of fact). The court may, however, grant an unopposed motion for summary judgment if the movant's papers are themselves sufficient to support the motion and do not on their face reveal a genuine issue of material fact. See United States v. Real Property at Incline Village, 47 F.3d 1511, 1520 (9th Cir.1995) (court may not grant judgment for moving party without consideration of whether motion and supporting papers satisfy Fed. R. Civ. P. 56), rev'd on other grounds sub nom. Degen v. United States, 517 U.S. 820 (1996).

**B.   Analysis**

Plaintiff's apparent first cause of action is entitled "Violation of Art.1, Sec.4 of the California Constitution, Civil Code § 52.1 and 42 U.S.C. § 1983".  Compl. at 5.  Through this cause of action, plaintiff appears to assert (1) a claim under § 1983 that defendants violated its right to free exercise under the First Amendment to the United States Constitution; and (2) a claim under Cal. Civil Code § 52.1 that defendants violated its right to free exercise under Art.1, Sec.4 of the California Constitution.  Under the umbrella of this first cause of action, plaintiff identifies its "first" and "second" causes of action as "Declaratory Relief" and "Injunctive Relief", which reference "numerous constitutional violations set forth by Plaintiffs [sic] in this Complaint."  Compl. ¶ 43; see also id. ¶ 33.  These subsidiary headings only seek remedies; they do not assert independent causes of action.

Plaintiff's next cause of action (labeled as its third) alleges a violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA).  Id. at 12.

Plaintiff's next cause of action (labeled as its fourth) is entitled "Art.1, Sec.4 Cal. Const., 42 U.S.C. § 1983" and "seeks relief for the unconstitutional actions causing damages suffered as a result of [defendants'] illegal and improper actions pursuant to 42 U.S.C. § 1983."  Id. ¶ 54.  The allegations are vague, but as in its first cause of action, plaintiff asserts claims pursuant to § 1983 and Cal. Civil Code § 52.1 for violations of its rights to free religious exercise as well as the improper seizure of property and coercive threats made by defendants.  Id. ¶¶ 53–56.

**1.   42 U.S.C. § 1983**

Plaintiff raises 42 U.S.C. § 1983 in its first and fourth causes of action.  Plaintiff's theory appears to be that defendants violated § 1983 by infringing on its First Amendment rights to Free Exercise and by seizing its property and detaining its members.  Specifically, plaintiff alleges that defendants "took, damaged and destroyed cannabis", "threatened to further harm [the] church", intimidated members of the church, and "acted in a coercive manner".   Compl. ¶ 54; see also Compl. ¶¶ 24–25, 30, 34 & 41.

Section 1983 provides that "[e]very person who, under color of [law] . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]" 42 U.S.C.A. § 1983.

### a.   The "Heck Bar"

Defendants argue that plaintiff is precluded from bringing its § 1983 claim pursuant to what has come to be known as the "Heck preclusion doctrine" or the "Heck bar". The Supreme Court ruled in Heck v. Humphrey that a plaintiff may not bring suit under § 1983 if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence". 512 U.S. 477, 487 (1994). The Heck court explained that "in order to recover damages for . . . harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983." Id. at 486–87 (footnote and citation omitted). Accordingly, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Id. at 487. "[T]he relevant question is whether success in a subsequent § 1983 suit would 'necessarily imply' or 'demonstrate' the invalidity of the earlier conviction or sentence". Smith v. City of Hemet, 394 F.3d 689, 695 (9th Cir. 2005) (quoting Heck, 512 U.S. at 487). Moreover, where "there is a sufficient community of interest between" a plaintiff asserting a § 1983 cause of action and a criminally-convicted party "to bind plaintiffs to the criminal jury's finding, the district court's dismissal" of the

§ 1983 action pursuant to Heck is appropriate. Beets v. Cnty. of Los Angeles, 669 F.3d 1038, 1048 (9th Cir. 2012).

On January 12, 2023, the criminal complaint against Berti was amended to add count 4, misdemeanor possession of cannabis in excess of 28.5 grams, or more than 8 grams of concentrated cannabis, or both. Berti pled no contest to that charge and was convicted. RJN, Ex. M. On April 19, 2023, Reyes pled no contest to the same charge and was convicted. RJN, Ex. I.

Here, success on plaintiff's 42 U.S.C. § 1983 claim would necessarily imply or demonstrate the invalidity of Reyes's and Berti's criminal convictions. The unlawful possession of more than 28.5 grams of marijuana formed the basis for their respective pleas and convictions for criminal possession of marijuana under Health and Safety Code § 11357(b)(2). Moreover, Reyes's and Berti's pleas and convictions are both based entirely on the conduct underlying plaintiff's claim: the seizure of marijuana at 191 Station Ranch Road and the detention of Reyes and Berti on criminal charges. See Compl. ¶¶ 19, 24–25, 30, 34 & 41; RNJ, Exhibits G, I, K, and M. Reyes's and Berti's convictions rely on the lawful nature of the search and seizure and their unlawful possession of marijuana. By seeking remedies for the allegedly-unlawful search and asking the court to recognize that their possession of marijuana was lawful, plaintiff seeks to overturn those bases of Reyes's and Berti's criminal convictions. As such, Reyes's and Berti's criminal convictions preclude plaintiff's 42 U.S.C § 1983 claim pursuant to Heck.[3]

      **b.    Plaintiff's Substantive Claim Under the First Amendment**

Plaintiff alleges that defendants impermissibly interfered with church members' religious beliefs and practices, burdened their religious practices, and impeded their right to freely exercise their religion. E.g., Compl. ¶¶ 33, 53–54.

---

[3] Under a very similar analysis and for the reasons explained above, plaintiff is independently collaterally estopped from relitigating this issue. See State Farm Mut. Auto. Ins. Co. v. Davis, 7 F.3d 180, 183 (9th Cir. 1993); see also Cunningham v. Gates, 312 F.3d 1148, 1155 (9th Cir. 2002), as amended on denial of reh'g (Jan. 14, 2003).

9

The Free Exercise Clause, applicable to the states through the Fourteenth Amendment (Cantwell v. State of Conn., 310 U.S. 296, 303 (1940)), provides that "Congress shall make no law . . . prohibiting the free exercise [of religion]". U.S. Const., amend. I. "The right to freely exercise one's religion, however, 'does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).' Under the governing standard, 'a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice.'" Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127–28 (9th Cir. 2009) (quoting Employment Div., Dep't of Human Res. of Or. v. Smith, 494 U.S. 872, 879 (1990) and Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 531 (1993)).

Accordingly, a state may prohibit "religiously inspired" drug use without violating the free exercise clause of the First Amendment. Smith, 494 U.S. at 874, 878–79 ("We have never held that an individual's religious beliefs excuse him from compliance with an otherwise valid law prohibiting conduct that the State is free to regulate."). "The government's ability to enforce generally applicable prohibitions of socially harmful conduct, like its ability to carry out other aspects of public policy, 'cannot depend on measuring the effects of a government action on a religious objector's spiritual development.' To make an individual's obligation to obey such a law contingent upon the law's coincidence with his religious beliefs, except where the State's interest is 'compelling'—permitting him, by virtue of his beliefs, 'to become a law unto himself'—contradicts both constitutional tradition and common sense." Id. at 885 (citations omitted). Where drug laws are both neutral and generally applicable, they may be enforced "even if doing so substantially burdens [one's] ability to practice his religion." Guam v. Guerrero, 290 F.3d 1210, 1216 (9th Cir. 2002).

Even if Heck did not bar plaintiff's § 1983 claim, defendants would prevail on their motion for summary judgment as to the claim. The evidence before the court universally

1  demonstrates that defendants have not prevented plaintiff or its members from using or
2  possessing cannabis, in lawful quantities, as a sacrament. Instead, defendants have
3  enforced neutral state laws and codes of general applicability prohibiting unregistered
4  large-scale cannabis activity. As explained above, enforcement of such laws and codes
5  does not violate the Free Exercise Clause of the First Amendment. As such, defendants
6  have met their burden in demonstrating that their actions did not violate plaintiff's right to
7  freely exercise its religion under the First Amendment.

### 2. Religious Land Use and Institutionalized Persons Act (RLUIPA)

Plaintiff alleges that defendants "have not enforced their applicable zoning and land use requirement against many other churches" and as a result are using their police powers to discriminate against plaintiff because of its religious beliefs in violation of RLUIPA. Compl. ¶¶ 46–48.

"RLUIPA has two separate provisions limiting government regulation of land use. One prohibits governments from implementing land use regulations that impose 'a substantial burden' on religious exercise unless the government demonstrates that they further a 'compelling governmental interest' by the 'least restrictive means.'" Centro Familiar Cristiano Buenas Nuevas v. City of Yuma, 651 F.3d 1163, 1169 (9th Cir. 2011) (quoting 42 U.S.C. § 2000cc(a)). Although plaintiff does not specifically identify the provision in RLUIPA it alleges defendants violated, the complaint nowhere cites, raises, or uses language suggesting a claim based on RLUIPA's "substantial burden" provision.

"The second RLUIPA land use provision prohibits a government from imposing a land use restriction on a religious assembly 'on less than equal terms' with a nonreligious assembly." Id. This "equal terms" provision is entitled "Discrimination and exclusion" in the statute. 42 U.S.C.A. § 2000cc(b). Plaintiff's complaint is replete with language invoking this "equal terms" provision. It alleges that RLUIPA "prohibits actions . . . that are discriminatory" against the church; that defendants "have not enforced their applicable zoning and land use requirement against many other churches"; and that defendants' "discriminatory actions . . . violate RLUIPA." Compl. ¶¶ 12 & 46–48.

11

Accordingly, the court reads plaintiff's complaint as raising a claim under the "equal terms" provision.[4]

The Ninth Circuit has "identified four elements of an equal terms claim: (1) there must be an imposition or implementation of a land-use regulation, (2) by a government, (3) on a religious assembly or institution, and (4) the imposition or implementation must be on less than equal terms with a nonreligious assembly or institution. New Harvest Christian Fellowship v. City of Salinas, 29 F.4th 596, 604 (9th Cir. 2022), cert. denied, 143 S. Ct. 567 (2023) (quoting Centro Familiar, 651 F.3d at 1170–71) (internal citations and quotation marks omitted). "The equal terms provision contemplates both facial and as-applied challenges. It prohibits the government from 'imposing,' *i.e.*, enacting, a facially discriminatory ordinance or 'implementing,' *i.e.*, enforcing, a facially neutral ordinance in a discriminatory manner." Id. (internal quotation marks omitted).

Plaintiff "bears the initial burden of 'produc[ing] prima facie evidence to support a claim alleging a violation' of the equal terms provision." Id. at 605 (quoting 42 U.S.C. § 2000cc-2(b)). If plaintiff succeeds in doing so, "the statute shifts the burden of persuasion to the government on 'any element of the [equal treatment] claim.'" Id. (quoting 42 U.S.C. § 2000cc-2(b)).

Here, there is no dispute that the first three elements of plaintiff's equal terms claim have been met. Defendants do not dispute that (1) there is a land-use regulation, namely land use and zoning ordinances concerning the regulation of commercial cannabis, (2) imposed by a government body or bodies, (3) on plaintiff, which is a religious assembly or institution. The dispute concerns only the fourth element, concerning whether the imposition or implementation was on less than equal terms with a nonreligious assembly or institution.

---

[4] Notably, plaintiff's counsel has not appeared at the court's two most recent case management conferences, nor has plaintiff filed an opposition or statement of non-opposition to the present motion. These repeated derelictions of duty and violations of the district's local rules put defendants at somewhat of a handicap in anticipating plaintiff's preferred legal theories and have left plaintiff's complaint to stand alone to fulfil that function.

12

Because plaintiff declined to respond to defendants' motion for summary judgment, there is no evidence to support the mere allegations of the complaint. In it, plaintiff makes threadbare assertions that defendants seized cannabis pursuant to "provisions of that [land-use regulation] code and accompanying regulations prohibiting secular marijuana dispensaries". Compl. ¶¶ 18, 24–28, 45–50. However, there are no allegations—much less evidence—that any regulation imposed a restriction or duty on plaintiff on less-than-equal terms with a nonreligious assembly or institution. Or even, for that matter, on less-than-equal terms with a different religious assembly or institution. Plaintiff has failed to produce any evidence that it was treated differently than a similarly situated organization. Thus, plaintiff offers no evidence creating a factual dispute with defendants' submissions suggesting that all organizations engaged in commercial cannabis activities must comply with the County Code by registering and licensing their businesses with the County and State. See, e.g., RJN, Exs. N–Q; see also Larson Decl. ¶¶ 1–17 (describing genesis of proceedings against plaintiff). Here, uncontested evidence shows that plaintiff failed to register with the County and obtained no licensure from the State. Plaintiff has not identified any similarly-situated organization that was treated differently. Without any evidentiary dispute as to differential treatment, plaintiff's nondiscrimination RLUIPA claim fails.

### 3. Bane Act

"Civil Code section 52.1 [the Bane Act] authorizes an action at law, a suit in equity, or both, against anyone who interferes, or tries to do so, by threats, intimidation, or coercion, with an individual's exercise or enjoyment of rights secured by federal or state law." Jones v. Kmart Corp., 17 Cal. 4th 329, 331 & 334 (1998) (the statute "require[s] an attempted or completed act of interference with a legal right, accompanied by a form of coercion"); see also Cal. Civ. Code §52.1(b); Venegas v. Cnty. of Los Angeles, 32 Cal. 4th 820, 843 (2004) ("its provisions are limited to threats, intimidation, or coercion that interferes with a constitutional or statutory right").

"California's Bane Act requires proof of an underlying constitutional violation."

13

1  Williamson v. City of Nat'l City, 23 F.4th 1146, 1155 (9th Cir. 2022); accord Reese v.
2  County of Sacramento, 888 F.3d 1030, 1044 (9th Cir. 2018) ("the elements of the
3  excessive force claim under § 52.1 are the same as under § 1983") (quoting Chaudhry v.
4  City of Los Angeles, 751 F.3d 1096, 1105 (9th Cir. 2014)); see also Evans v. Cnty. of Los
5  Angeles, No. 21-55406, 2022 WL 3359171, at *2 (9th Cir. Aug. 15, 2022) ("arguments
6  concerning municipal liability fail if there is no underlying violation of their constitutional
7  rights").  Where there is no underlying statutory or constitutional violation, summary
8  judgment must be granted on Bane Act claims.  Williamson, 23 F.4th at 1155 ("Because
9  we conclude that the Officers did not violate Williamson's Fourth Amendment rights, we
10 reverse the district court's decision denying summary judgment on [plaintiff's] Bane Act
11 claims").

Plaintiff's complaint alleges that defendants used intimidation and coercion when violating plaintiff's constitutionally-guaranteed religious freedoms.  As explained above, plaintiffs' First Amendment and RLIUPA claims fail and therefore cannot support a Bane Act claim.

Plaintiff alleges that the same conduct at issue in its First Amendment claim violated Article 1, section 4 of the California Constitution, which provides:

> Free exercise and enjoyment of religion without discrimination or preference are guaranteed. This liberty of conscience does not excuse acts that are licentious or inconsistent with the peace or safety of the State. The Legislature shall make no law respecting an establishment of religion.

Cal. Const., art. I, § 4.

"The Religion Clause protections 'embrace two concepts—freedom to believe and freedom to act.  The first is absolute but, in the nature of things, the second cannot be.'" Naoko Ohno v. Yuko Yasuma, 723 F.3d 984, 1006 (9th Cir. 2013) (quoting Cantwell, 310 U.S. at 303–04).  "[W]hile religious belief is absolutely protected, religiously motivated conduct is not.  Such conduct 'remains subject to regulation for the protection of society.'" People v. Rubin, 168 Cal. App. 4th 1144, 1151 (2008) (quoting Molko v. Holly Spirit Assn., 46 Cal. 3d 1092, 1112–1113 (1988)); see also Cal. Const., art. I, § 4 ("liberty of

14

conscience does not excuse acts that are licentious or inconsistent with the peace or safety of the State").

Plaintiff has not provided any evidence suggesting that it has been barred from "the sacramental use of cannabis," which is a "primary and central belief" of the church. See Compl. ¶ 17; see also id. ¶¶ 18, 23, 25–26; see generally Cnty. of San Bernardino v. Mancini, 83 Cal. App. 5th 1095, 1106 (2022), reh'g denied (Oct. 31, 2022), review denied (Dec. 21, 2022) (ordinance banning commercial cannabis activity did not violate article I, section 4 of the California Constitution or RLIUPA where non-commercial religious activity was permitted). Indeed, plaintiff does not argue that the applicable regulations bar its members from their sacramental use of cannabis at all, or even that the regulations would necessarily bar the church's secular commercial cannabis operations if the church attempted to comply with them. Plaintiff instead argues that because it is a church rather than a secular organization, it should simply be exempt from all cannabis regulation. Compl. ¶¶ 26–29 & p.14 (seeking a permanent injunction prohibiting defendants "from enforcing . . . state laws prohibiting or regulation cannabis activities against" plaintiff). But the record evidence unambiguously demonstrates that defendants seized the cannabis at issue while enforcing a facially-neutral law in a non-discriminatory manner pursuant to an investigation targeting unlicensed commercial cannabis activity and welfare fraud, for which there was substantial evidence. See Larson Decl. ¶¶ 2–17. And there is no dispute that the challenged regulations limit the church's commercial cannabis activity while permitting its members' sacramental use. Accordingly, plaintiff has failed to demonstrate a dispute of material fact as to whether defendants' enforcement actions impermissibly infringed on plaintiff's liberty of conscience.

Because plaintiff's substantive claims of constitutional and statutory violations cannot survive defendants' motion for summary judgment, defendants' summary judgment motion must also be granted with respect to plaintiff's Bane Act claim.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is

1    GRANTED.  As this ruling disposes of the entire case, the clerk shall close the file.

2        **IT IS SO ORDERED.**

3    Dated:  October 31, 2023

_____
PHYLLIS J. HAMILTON
United States District Judge